HERGET, Judge.
This is a workmen’s compensation suit instituted by plaintiff, Jack H. Scardina, against his employer, Seth W. Ward doing business as Seth W. Ward Construction Company and its workmen’s compensation insurer, The Travelers Insurance Company.
Defendants appealed from a judgment of the Trial Court, in which written reasons were assigned therefor, in favor of Plaintiff against Defendants, jointly and in solido, in the sum of $14,000, payable at the rate of $35 per week commencing May 9, 1962, together with legal interest from date of judicial demand on all past due installments and for costs; and, in addition, judgment in favor of Plaintiff against the Defendants for $2,500 medical fees and fixing the expert witness fees of Doctors James *566 F. Halley and James Lorio at the sum of $50 each and taxing same as costs. Plaintiff, through counsel, answered the appeal complaining of the failure on the part of the Trial Judge to award penalties and attorney’s fee.
The defense was predicated on two grounds: (1) Plaintiff failed to show by a preponderance of the evidence that he sustained an accident while employed by Ward Construction Company, defendant, insured by The Travelers, and (2) alternatively, conceding the occurrence of an accident, the injuries allegedly sustained by Plaintiff were, by the evidence, not proved to have been caused by the accident for which he seeks redress.
Defendants’ counsel readily concede that the courts in workmen’s compensation cases have accepted the testimony of injured employees as to the happening of accidents and the injuries sustained by them, where no witnesses were present, and the testimony given by said employees and the corroborating circumstances surrounding the accidents were reasonable and supported the truthfulness of their statements, warranting the courts in awarding them judgments. The courts do this with recognition of their obligation to give full protection to claimants asserting claims for disabling injuries, fully cognizant of the responsibility resting on their shoulders. Nevertheless, it is well recognized as a jurisprudential rule, to which no exception is made even in compensation cases, the burden of proof rests on plaintiff to establish his claim with reasonable certaint}^ and by a preponderance of the evidence.
Plaintiff herein, an ironworker, admittedly sustained an injury to his back while employed on another job in 1957 and was then seen by the same orthopedist who testified in this case, Doctor James F. Halley. Doctor Halley testified concerning the injury allegedly sustained in 1957. He found that Plaintiff was suffering from a congenital condition in his back, spondylolisthesis at H-5, and had sustained a muscle strain which was superimposed on that congenital condition. He conceded his findings and observation of Plaintiff resulting from the alleged accident sustained by him on May 8, 1962 were essentially the same found by him following the alleged accident in 1957 for which Plaintiff received workmen’s compensation. The finding of Doctor James Lorio, who saw Plaintiff subsequent to the alleged accident for which recovery is sought here, was essentially the same as that of Doctor Halley. This remarkable circumstance only becomes of moment when we consider the question of whether Plaintiff has proved with reasonable certainty an accident occurred on May 8, 1962 while employed by defendant, Seth W. Ward.
According to Plaintiff he was employed as an ironworker by Defendant on construction work for the Holsum Bakery in Baton Rouge. On the date of his alleged injury, according to his testimony, he was engaged in what has been described as “shaking out iron” which operation consists in re-arranging stacked, previously placed, stock materials to be incorporated in the proposed building. In “shaking out iron” the operation sometimes requires the ground man to attach to one end of the material the hook of a crane and same is then skidded to its proposed location. However, specifically, in the accident in which Plaintiff was allegedly injured the operation consisted of applying a choke in the center of the material to be moved, thereby enabling the operator of the crane to lift the object, which would then be balanced, and transporting it to its designated location. According to what we believe to be the incredible testimony of Plaintiff, his injury resulted when the crane operated by a Mr. Douglas Smith lifted a steel I-beam estimated by Plaintiff to be “40 or 50 or 60 foot long,” which was not “quite choked on the center” and Mr. Smith, the crane operator, without waiting for the 'flag call’ (a signal by which Plaintiff would inform the operator of Plaintiff’s readiness for the operator to commence operation of the crane) “all of a sudden, he pulled the lever and jerked the iron, or *567 jerked me up with the iron. When I come down, one of my foot done hit a hole. When it did, I fell on my left knee and the hole — he slacked back down on the iron —and the whole weight of that beam — I was on my knee and had that heavy end of that iron in my arms, and the other end. was kicking up in the air like that, and I hollered at him, I said, man, you done tore my back aloose, and I went around the other side— Mr. Braud was the steward on the job — and I told Mr. Braud about hurting my back, and I went, told Mr. Hamilton about hurting my back, and I made the evening out.” The weight of the I-beam that was being handled does not appear in the testimony. Nonetheless, we believe it to be fair for the Court to take judicial notice steel I-beams of the lengths described by Plaintiff would be of considerable weight. Certainly it also seems reasonable to believe had such an accident occurred involving Plaintiff, same would have caused an immediate outcry and complaint of injury. Though Plaintiff testified Mr. Braud, a fellow worker, was present when the alleged accident occurred Mr. Braud, as a witness, related he knew nothing about the accident until Plaintiff informed him of the fact the following day. It also seems reasonable to believe had Mr. Smith, the crane operator^ handled the mechanism in the way described by Plaintiff, causing the injuries of which he complains, Plaintiff would have at that time in rather affirmative language informed Mr. Smith of his negligence. Mr. Smith testified he knew nothing of Plaintiff’s alleged accident until the next day and positively denied he had at any time been guilty of the negligent acts attributed to him by Plaintiff and furthermore declared that under no circumstances was movement made of the iron to be “shaken” until signal was transmitted to him by the ironworker.
Though the courts have invariably awarded compensation where convinced of the reasonableness of the statement of the employee as to the happening of the accident and where corroborating circumstances lend credence thereto, nowhere have we found, even m workmen s compensation cases, a judgment predicated solely upon speculation, conjecture, possibility and unsupported probability.
Without quoting the opinion but citing same with full approval, the Court of Appeal, Third Circuit, with Judge Frugé as the organ of the Court, in Guilbeaux v. Trinity Universal Insurance Company, La.App., 134 So.2d 717, made an exhaustive and complete review of the Louisiana Courts’ holdings and therein delineated the basis on which the uncorroborated testimony of an employee is insufficient to warrant judgment in his favor in a workmen’s compensation case.
For these reasons the judgment of the Trial Court is reversed, and judgment is rendered in favor of Defendants and against Plaintiff at Plaintiff’s costs.
Reversed and rendered.